**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TIMOTHY C. G., Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, Defendant. | : | No. 26-1873 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE October 7, 2026

Timothy G. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying his claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. Plaintiff has filed a brief in support of his request for review, the Commissioner has responded to it, and Plaintiff has filed a reply brief. For the reasons set forth below, Plaintiff's request for review is denied.

## I. PROCEDURAL HISTORY[1]

On November 2, 2023, Plaintiff applied for SSI, alleging that his disability commenced on October 31, 2022, based on physical and mental impairments. R. 17. His claims were denied initially on March 8, 2024, and upon reconsideration, on September 13, 2024, so Plaintiff requested a hearing. R. 17. On March 4, 2025, Plaintiff, represented by counsel, and vocational expert Harry Tanzey ("the VE"), testified telephonically before Administrative Law Judge Stuart Gauffreau ("the ALJ"). R. 10. On May 12, 2025, the ALJ, using the sequential evaluation process for

[1] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review by Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record ("R.").

disability,[2] issued an unfavorable decision. R. 10-42. The Social Security Administration's Appeals Council denied Plaintiff's request for review, on January 20, 2026, making the ALJ's findings the final determination of the Commissioner. R. 1-3. Plaintiff seeks judicial review, and the parties consented to this court's jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

## II. FACTUAL BACKGROUND

### A. Personal History

Plaintiff, born on January 20, 1986, was 36 years old on his alleged disability onset date and 39 years old at the time of the administrative hearing. R. 61. He has a high school diploma, has a driver's license, and lives with his parents. R. 52.

### B. Plaintiff's Testimony

Plaintiff testified that he did not work for five years preceding the hearing because of issues related to his diagnosis of left leg deep vein thrombosis ("DVT")[3] and blood clots. R. 52. His left

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 416.920(b).
>
> 2. If claimant is found not to have a severe impairment which significantly limits her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 416.920(c).
>
> 3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 416.920(d).
>
> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 416.920(f).
>
> 5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. § 416.920(g).

[3] "Deep venous thrombosis (DVT) refers to a blood clot that develops in the deep venous system…. Most DVTs occur in the veins of the calf, but they also can develop in the thigh and hip area and in the arms. These blood clots usually begin in areas where blood flow is stopped or decreased, for example when there is an injury to the blood vessel wall." *Deep Vein Thrombosis*, American Venous Forum (last visited Oct. 2, 2026), https://www.venousforum.org/patients/what-is-vein-disease/what-is-deep-vein-thrombosis/.

leg swells when he walks or stands too long. R. 52-53. He can walk or stand on his feet for twenty to thirty minutes before having to sit down; and can sit for thirty to forty-five minutes before he must get up and move around. R. 53-54. Plaintiff feels a throbbing pain when he walks or sits for too long. R. 54. When sitting, Plaintiff elevates his left leg, as instructed by his doctor, at approximately a forty-five-degree angle or at eye level, until the swelling stops, after fifteen to twenty minutes. R. 54-55. He must elevate his leg four or five times per day. R. 56. Plaintiff wears compression socks to reduce swelling and takes Elquis, a blood thinner, to manage blood clots. R. 53. Plaintiff does not believe that he can keep both feet on the ground when sitting or standing for a full eight hours. R. 56. However, he can shop and help his mother with chores such as vacuuming and sweeping. R. 53-54. To travel, Plaintiff takes the bus or his mother drives him. R. 52.

C. <u>Vocational Testimony</u>

Plaintiff has no past relevant work, because he did not work during the five years preceding the hearing. R. 57. The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age and education, who is limited to sedentary,[4] unskilled[5] work, with the following additional limitations: no use of foot controls with the left foot; no climbing of ropes, ladders, or scaffolds; no kneeling or crawling; no exposure to unprotected heights or moving mechanical parts; occasional use of other postural activities; frequent exposure to extreme temperatures, humidity, and vibration; the ability to understand, remember, and carry out simple instructions; the ability to make simple work-related decisions; and frequent interaction with supervisors, coworkers, and the public. R. 57. The VE testified that such an individual can perform the following three sedentary,

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967.

[5] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a).

unskilled jobs: (1) parts assembler, 25,000 positions in the national economy; (2) table worker, 7,000 positions in the national economy; and (3) optical assembler, 38,000 positions in the national economy. R. 57-58. The VE testified that an employer would tolerate an individual being off task due to the need to elevate their leg only for up to 9% of the workday. R. 58. The VE also opined that an individual would be unemployable if they were unable to complete their work duties while their leg was elevated at or above waist level, or if they missed two days of work per month on a continuing, unscheduled basis. R. 58-59.

## III. THE ALJ's FINDINGS

In his decision, the ALJ issued the following findings:

> 1. [Plaintiff] has not engaged in substantial gainful activity since October 31, 2022, the alleged onset date (20 CFR 416.920(b) and 416.971 *et seq.*).
>
> 2. [Plaintiff] has the following severe impairments: chronic deep vein thrombosis (DVT) of left lower extremity, anxiety, depression, and substance use disorder (20 CFR 416.920(c)).
>
> 3. Even with the [Plaintiff's] substance use, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).
>
> 4. After careful consideration of the entire record, I find that based on all of the impairments, including the claimant's substance use, the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except: No use of foot controls with the left foot. No climbing of ropes, ladders, or scaffolds. No kneeling or crawling. Can perform other postural activities no more than occasionally. No exposure to unprotected heights or moving mechanical parts. Frequent exposure to extreme temperatures, humidity, and vibration. Can understand, remember and carry out simple instructions. Limited to simple work-related decisions. Limited to frequent interaction with supervisors, co-workers, and the public. Would be absent from work two or more days per month on a regular basis.

5. [Plaintiff] has no past relevant work (20 CFR 416.965).

6. [Plaintiff] is a younger individual age 18-44 (20 CFR 416.963).

7. [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering [Plaintiff's] age, education, work experience, and residual functional capacity based on all the impairments, including the substance use disorder, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 416.960(c) and 416.966).

10. If [Plaintiff] stopped the substance use, the remaining limitations would cause more than a minimal impact on [Plaintiff's] ability to perform basic work activities; therefore, [Plaintiff] would have a severe impairment or combination of impairments (20 CFR 416.922).

11. If [Plaintiff] stopped the substance use, [Plaintiff] would not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.994(b)(5)(i)).

12. After careful consideration of the entire record, I find that, if [Plaintiff] stopped the substance use, [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except: No use of foot controls with the left foot. No climbing of ropes, ladders, or scaffolds. No kneeling or crawling. Can perform other postural activities no more than occasionally. No exposure to unprotected heights or moving mechanical parts. Frequent exposure to extreme temperatures, humidity, and vibration. Can understand, remember and carry out simple instructions. Limited to simple work-related decisions. Limited to frequent interaction with supervisors, co-workers, and the public.

> 13. [Plaintiff] does not have past relevant work (20 CFR 416.965).
>
> 14. Transferability of job skills is not an issue in this case because [Plaintiff] does not have past relevant work (20 CFR 416.968).
>
> 15. If [Plaintiff] stopped the substance use, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).
>
> 16. The substance use disorder is a contributing factor material to the determination of disability because [Plaintiff] would not be disabled if he stopped the substance use (20 CFR 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, [Plaintiff] has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

R. 19-20, 22, 28-30, 32-33, 40-41.

## IV. DISCUSSION

A. Standard of Review

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by

substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B. Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents him from returning to his past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that his impairment results in functional limitations to performing his past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given his age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C. Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process ("SEP"), the ALJ determined that, although Plaintiff has no past relevant work, he can perform jobs that exist in the national economy and, therefore, was not disabled. R. 17-41. Plaintiff disputes the ALJ's non-disability determination and argues that he committed reversible legal error by failing to account for his asserted need to elevate his leg in the RFC. Pl. Br. at 4-8. The Commissioner denies these assertions of error. Resp. at 4-11. Plaintiff's argument fails.

The ALJ Properly Rejected Plaintiff's Testimony Regarding Leg Elevation

Plaintiff's sole argument is that the ALJ failed to incorporate into the RFC, his assertion that DVT requires him to elevate his left leg at a forty-five-degree angle or eye level, for fifteen to twenty minutes, four to five times per day. Pl. Br. at 4. He cites to evidence in the record that documents his DVT diagnosis, treatment, and symptoms, including testimony that he needs to elevate his left leg, and a purported medical opinion by vascular surgeon Samuel Han, M.D. ("Dr. Han") of the same. Pl. Br. at 4. This argument fails, because the ALJ complied with Social Security Ruling ("SSR") 16-3p when evaluating Plaintiff's allegation that he needs to elevate his leg.

Social Security Ruling 16-3p sets forth the two-step process by which an ALJ evaluates an individual's impairment-related symptoms in the disability determination process. First, the ALJ must determine whether there is an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms, next the ALJ must evaluate the intensity and persistence of those symptoms to determine the extent to which they actually limit the individual's ability to perform work-related activities. SSR 16-3p, 2017 WL 5180304, at *2-3 (Oct. 25, 2017). Symptoms are defined as the claimant's own description of his physical or

mental impairment. *Id.* at *3. When evaluating the intensity and persistence of a claimant's symptoms, the ALJ is authorized to consider, *inter alia*: (1) objective medical evidence; and (2) other evidence in the record, including the claimant's activities and the treatment the claimant has received for his conditions. *Id.* at *11-*20. "[A]n individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." *Id.* at *2. Instead, the ALJ must consider the extent to which the individual's symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record. *Id.*

Herein, the ALJ first determined that Plaintiff's diagnosis of chronic DVT is a severe impairment that significantly limits his ability to perform basic work activities. R. 19-20. Then, the ALJ assessed that Plaintiff's DVT could reasonably be expected to limit his ability to function due to pain and swelling in his leg but ultimately decided that his testimony regarding leg elevation was not supported by the evidence. R. 34.

The ALJ considered Plaintiff's testimony that describes his suffering from left leg DVT: he states that a doctor instructed him to elevate his leg to eye level for fifteen to twenty minutes to relieve pain and swelling; he elevates his leg when sitting, whenever possible; he wears compression socks; and he feels pain when he cannot elevate his leg. R. 33. The ALJ also considered evidence demonstrating that Plaintiff has some physical limitations resulting from DVT. Specifically, records from Plaintiff's consultative exam with Dr. Greenberg documented a history of chronic left lower-extremity DVT above the knee and intermittent pain in the left thigh. R. 34. The ALJ also considered Dr. Han's diagnosis of left-leg DVT, and Plaintiff's reported complaint of intermittent swelling in his left leg that improved with elevation. R. 34. Additionally, the ALJ considered Dr. Ford's notation of chronic scarring in the common femoral vein and evidence that Plaintiff inconsistently took his prescribed Eliquis. R. 35. Finally, the ALJ

considered findings from a consultative exam with Dr. Greenberg, during which Plaintiff's left leg was noted to be tight, erythematous,[6] and shiny, with a thigh circumference of 47 centimeters on the left compared to 40 centimeters on the right. R. 36-37.

Furthermore, the ALJ considered evidence indicating that Plaintiff's physical functioning was not significantly limited by his DVT. Specifically, function reports from Plaintiff and his mother indicated that he ventures outside alone daily, drives, shops, helps his mother at the corner store, and walks his dog a few times per week. R. 33. The ALJ noted that Plaintiff did not bring his cane to the March 15, 2023, consultative exam with Dr. Greenberg and reported participation in activities of daily living ("ADLs"), including cooking, cleaning, doing laundry, shopping, showering, and dressing himself. R. 34. Further, the ALJ considered evidence that Plaintiff had repeated normal physical exams with consultative examiner, Dr. Greenberg, and emergency physician Dr. Garson. R. 34-35.

The ALJ also considered several medical opinions, including Dr. Greenberg's assessment that Plaintiff could sit for eight hours, stand for two hours, and walk for one hour during a workday; required the use of a cane to ambulate beyond fifteen feet; could occasionally operate foot controls with his left foot; could never climb ladders or scaffolds, kneel, crouch, or crawl; could occasionally climb stairs and ramps and balance; and could frequently stoop. R. 38. Dr. Greenberg opined that Plaintiff's use of a cane was medically necessary. *Id.* The ALJ found these opinions supported by the doctor's consultative exam and consistent with the record regarding Plaintiff's limitation to sedentary work. R. 38. However, the ALJ noted inconsistencies with Plaintiff's testimony that he did not require a cane and with evidence demonstrating that Plaintiff was not significantly limited in performing ADLs. *Id.*

---

[6] Erythematous means "abnormally inflamed or reddened." *Erythematous*, Dictionary.com (last visited Oct. 1, 2026), https://www.dictionary.com/browse/erythematous.

None of the medical opinions in the record state that Plaintiff needs to elevate his leg. Plaintiff contends that vascular surgeon Dr. Han rendered such an opinion, however, the record does not support that contention. At a December 13, 2023, appointment, Dr. Han "encouraged [Plaintiff] to wear compression stockings and elevate his legs" as part of Plaintiff's treatment plan. R. 324. That treatment recommendation, however, does not constitute a medical opinion. Under the regulations, "[a] medical opinion is a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions" in specified work-related abilities. 20 C.F.R. § 404.1513(a)(2). Dr. Han's recommendation that Plaintiff elevate his legs does not identify any functional limitation or restriction and appeared isolated to treatment provided on the day of his appointment. Dr. Han did not otherwise provide a medical opinion regarding Plaintiff's functional abilities or limitations. Thus, the ALJ was not required to evaluate Dr. Han's recommendation for persuasiveness as a medical opinion or incorporate it into the RFC.

Accordingly, Plaintiff's sole contention, that the ALJ failed to incorporate his need to elevate his leg into the RFC, fails. An implementing order and judgment will follow.